1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **HECTOR O. ESCALANTE,** ) | **CV F 05CV0689 AWI DLB** |
| )
| **Plaintiff**, )
| )  **MEMORANDUM ORDER AND**
| **v.** )  **OPINION DENYING**
| )  **PLAINTIFF'S MOTION FOR**
| **CITY OF DELANO, et al.,** )  **SUMMARY JUDGMENT.**
| )
| **Defendants.** )  Document # 33
| )

## INTRODUCTION

This is a civil rights action for damages arising from searches and two arrests that plaintiff Hector O. Escalante ("Plaintiff") alleges were without probable cause and supported by affidavits containing false and incomplete information. Plaintiff's complaint alleges two claims for relief; the first is a claim for violation of civil rights under 42 U.S.C., section 1983, and the second claim alleges conspiracy to violate due process and equal protection rights under 42 U.S.C., section 1983. In the instant motion, Plaintiff moves for summary judgment on both claims. Federal subject matter jurisdiction exists pursuant to 28 U.S.C., section 1331. Venue is proper in this court.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The complaint in this case was filed on May 30, 2005. Plaintiff's instant motion for summary judgment was originally filed on November 3, 2006. The motion was subsequently amended and re-noticed twice, the final re-notice being filed on November 14, 2006.

1   Defendants' opposition to Plaintiffs motion for summary judgment was filed on December 4,

2   2006, after an extension of time to file an opposition was granted by the court.  Plaintiff's

3   reply and objections to Defendants' "Separate Statement of Material Facts" was filed on

4   December 11, 2006.  The hearing date of December 18, 2006, was vacated and the matter

5   was taken under submission by order of the court on December 13, 2006.

6       Plaintiff's motion for summary judgment focuses on the role of individual defendant,

7   Ruben Campos ("Campos") in the procurement of a total of four search warrants, which lead

8   to two allegedly false arrests, occurring on June 9, 2003, and November 12, 2003.  Plaintiff's

9   motion for summary judgment alleges the warrants were supported by affidavits prepared and

10  signed by Campos that incorporated false or misleading information or which omitted facts

11  tending to indicate probable cause was lacking.  Plaintiff alleges Campos purposefully

12  falsified the facts set forth in the affidavits, or purposefully omitted exculpatory facts,

13  because of personal animosity between Campos and Plaintiff that existed since 1996, and that

14  was unrelated to any illegal activity on Plaintiff's part.

15      Most of Plaintiff's motion for summary judgment focuses on Campos' affidavit in

16  support of search warrant number 738 (the "738 Warrant"), issued on June 19, 2003,

17  authorizing the search of Plaintiff's person, car and residence; and the affidavit in support of

18  search warrant number 756 (the "756 Warrant") issued on November 13, 2003, also

19  authorizing the search of Plaintiff's residence and any vehicles on the property.  To a lesser

20  extent, Plaintiff's motion for summary judgment challenges the validity of search warrants

21  numbered 752 and 753, which authorized searches of Plaintiff's assets held at Wells Fargo

22  Bank, and at Kern Schools Federal Credit Union, respectively.

23                  **PARTIES' ALLEGED UNDISPUTED MATERIAL FACTS**

24      The court's function, with respect to the factual allegations of the parties, is to

25  evaluate the factual allegations of the *moving* party in light of the objections and disputations

26  of the *opposing* party to reach a conclusion as to what facts can be said to be true as a matter

27  of law.  That said, the court feels compelled to express its considerable disappointment at the

28  parties' submissions that purport to establish the factual context for the instant motion for

2

summary judgment.  Plaintiff's list of "Undisputed Material Facts" is, for the most part, not a

list of facts, but a list of conclusory characterizations and arguments.  For example, reference

to the language in an affidavit as "skeletal" or as lacking in some particular detail is

characterization and argument.  The "fact" is the affidavit, a document that speaks for itself.

Everything else is argument and belongs in the discussion.  It is hoped that future

submissions of statements of undisputed material fact by Plaintiff's attorneys will be

confined to allegations of fact.

Defendants' handling of the factual context of this motion is no less in need of

remediation.  Local Rule 56-260 governs submissions for motions for summary judgment.  It

provides that:

> Any party opposing a motion for summary judgment or summary
> adjudication *shall* reproduce the itemized facts in the Statement of Undisputed
> Facts and admit those facts that are undisputed and deny those that are
> disputed, including with each denial a citation to the particular portions of any
> pleading, affidavit, deposition, interrogatory answer, admission or other
> document relied upon in support of that denial.  The opposing may also file a
> *concise* "Statement of Disputed Facts," and the source thereof in the record, of
> all additional material facts as to which there is a genuine issue precluding
> summary judgment or adjudication.

Local Rule 56-260 (italics added).

Rather than comply with the local rule, Defendants submitted a "Separate Statement

of Undisputed Material Facts" that does not address the facts submitted by Plaintiff, but seeks

instead to create a separate narrative from Defendants' perspective.  In a summary judgment

motion, the non-moving party is required to respond to the factual allegations of the moving

party.  If Defendants want to create their own factual narrative, they will need to move for

summary judgment.  Because Defendants' list of facts is not compliant with the local rule and

not responsive to the moving party's alleged  facts, Defendants' Separate Statement of

Undisputed Material Facts will be disregarded.

To the extent the court chooses to disregard or omit certain of Plaintiff's or

Defendants' proffered undisputed material facts, the court expresses no opinion as to the

validity any factual assertion that may underlie or be represented by the omitted or

disregarded proffered material fact.  The court is simply determined in this case to confine its

3

1    consideration to those few and simple facts that it finds relevant to the issues presented.

2          Individual defendant Campos got in an argument with Plaintiff in 1996 over Campos'

3    relationship with Plaintiff's sister.  That argument gave rise to feelings of antipathy on

4    Campos' part that persisted.  Since Defendants do not dispute this fact, it is taken as

5    established.  Plaintiff contends that Campos embarked after the incident in 1996 on a

6    campaign of harassment of Plaintiff but presents no facts in support of that alleged fact.  That

7    alleged fact is therefore not accepted as established.  In 2003, Campos prepared four

8    applications for search warrants and prepared affidavits in support of each application.  The

9    affidavits are reproduced in the exhibits attached to Plaintiff's motion for summary judgment,

10   Document # 33.  The affidavit for the 738 warrant is located at pages 14 through 19.  The

11   affidavits for the 752 and 753 warrants are located at pages 71 through 82 and 83 through 93,

12   respectively.  The affidavit for the 756 warrant is located at pages 28 through 31.  These

13   affidavits are incorporated here by reference.

14         Plaintiff alleges that some of the factual representations made in the warrants are

15   factually inaccurate.  To the extent Plaintiff alleges facts that are contrary to facts set forth in

16   the affidavits, the facts alleged by Plaintiff are accepted as true because they are not properly

17   opposed by Defendants.  Those facts are not listed here but are incorporated into the

18   discussion that follows.  Defendant suffers no prejudice since the contrary facts alleged by

19   Plaintiff are immaterial to the issue of the validity of the warrants.  Plaintiff also alleges the

20   existence of a rule in force in the Delano Police Department that requires the permission of a

21   probation officer or district attorney before an inmate or arrestee can be used as a confidential

22   informant.  Plaintiff offers no proof of the existence of this rule, but the court accepts the

23   alleged fact for the sake of this discussion because it is not opposed.

24                                      **LEGAL STANDARD**

25         Summary judgment is appropriate when it is demonstrated that there exists no

26   genuine issue as to any material fact, and that the moving party is entitled to judgment as a

27   matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

28   Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755

1    F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d

2    1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial
> responsibility of informing the district court of the basis for its motion, and
> identifying those portions of "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any,"
> which it believes demonstrate the absence of a genuine issue of material fact.

6    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party has the burden

7    of proof at trial, that party must carry its initial burden at summary judgment by presenting

8    evidence affirmatively showing, for all essential elements of its case, that no reasonable jury

9    could find for the non-moving party.  United States v. Four Parcels of Real Property, 941

10   F.2d 1428, 1438 (11th Cir.1991) (en banc); Calderone v. United States, 799 F.2d 254, 259

11   (6th Cir. 1986); see also E.E.O.C. v. Union Independiente De La Autoridad De Acueductos Y

12   Alcantarillados De Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002) (stating that if "party moving

13   for summary judgment bears the burden of proof on an issue, he cannot prevail unless the

14   evidence that he provides on that issue is conclusive.")

15        If the moving party meets its initial responsibility, the burden then shifts to the

16   opposing party to establish that a genuine issue as to any material fact actually does exist.

17   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l

18   Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los

19   Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this

20   factual dispute, the opposing party may not rely upon the mere allegations or denials of its

21   pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

22   admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e);

23   Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474

24   F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in

25   contention is material, i.e., a fact that might affect the outcome of the suit under the

26   governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

27   Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute

28   is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

1     nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d

2     1433, 1436 (9th Cir. 1987).

3            In the endeavor to establish the existence of a factual dispute, the opposing party need

4     not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

5     claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

6     versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at

7     631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the

8     proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587

9     (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International

10    Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

11           In resolving the summary judgment motion, the court examines the pleadings,

12    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

13    any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06

14    (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

15    255, and all reasonable inferences that may be drawn from the facts placed before the court

16    must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United

17    States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of

18    Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the

19    air, and it is the opposing party's obligation to produce a factual predicate from which the

20    inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45

21    (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## DISCUSSION

23           Plaintiff's motion for summary judgment is focused solely on the legality of the

24    searches authorized by the warrants numbered 738, 756, 752, and 753.  "Under the Fourth

25    Amendment, made applicable to the States by the Fourteenth Amendment, Mapp v. Ohio,

26    367 U.S. 643 (1961), the people are 'to be secure in their persons, houses, papers, and effects,

27    against unreasonable searches and seizures, ... and no Warrants shall issue, but upon probable

28    cause ....' U.S. Const., Amdt. 4."  Maryland v. Pringle, 540 U.S. 366, 369, (2003)  Plaintiff

1 contends probable cause was lacking for the searches conducted pursuant to each of those

2 warrants.  Thus, the issue raised by Plaintiff's motion for summary judgment is whether the

3 affidavits supporting each of the contested search warrants present facts that are sufficient to

4 support a finding of probable cause.

5     Probable cause is defined as "facts and circumstances sufficient to warrant a prudent

6 man in believing that the (suspect) had committed or was committing an offense." Gerstein

7 v. Pugh, 420 U.S. 103, 111 (1975) (citation and quotations omitted).  In the context of a

8 search, "'[p]robable cause to search is defined as 'a fair probability that contraband or

9 evidence of a crime will be found in a particular place.' Illinois v. Gates, 462 U.S. 213, 238,

10 (1983)." U.S. v. Henson, 123 F.3d 1226, 1238 (9th Cir. 1997), overruled on other grounds by

11 United States v. Foster, 165 F.3d 689 (9th Cir.1999).  The parties agree that "whether a

12 reasonable officer could have believed probable cause ... existed to justify a search or an

13 arrest is 'an essentially legal question' that should be determined by the district court at the

14 earliest possible point in the litigation." Peng v. Mei Chin Penghu, 335 F.3d 970, 979 (9th

15 Cir. 2003).  Plaintiff correctly contends that in reviewing the validity of a warrant, a court is

16 limited to the information contained within the four corners of the underlying affidavit,

17 United States v. Taylor, 716 F.2d 701, 705 (9th Cir. 1983), unless the affiant misled the

18 magistrate by including false information or omitting exculpatory information. Franks v.

19 Delaware, 438 U.S. 154, 156 (1978).

20 **I.  The 738 Warrant**

21     The 738 Warrant was issued on June 19, 2003.  It authorized the search of Plaintiff's

22 person, his car, other persons in the car at the time of the search and Plaintiff's residence.

23 Doc. # 33, Exh. C.  The affidavit supporting the 738 Warrant contains four key elements.

24 First, the affiant, Campos, alleges he witnessed what he thought was a hand-to-hand drug sale

25 transaction between Plaintiff and an "unidentified Hispanic male."  Second, based on

26 suspicion arising from the witnessed hand-to-hand transaction, Campos arranged a controlled

27 buy by a person referred to as a "confidential informant" or "CI."  The controlled buy was

28 witnessed by Campos and another officer (detective Adams).  The officers reported they

7

witnessed Plaintiff hand the CI a bindle of a substance containing methamphetamine while Plaintiff was parked in his car.  The affidavit next describes a controlled buy, again using a CI and witnessed by Campos and Adams, of a bindle of substance containing methamphetamine from Plaintiff while Plaintiff was at his residence.  Finally, the affidavit describes a witnessed controlled buy of methamphetamine from Plaintiff in his car.

Plaintiff contentions with respect to the 738 Warrant relate mostly to allegations Campos makes early in the affidavit that say, in effect, that Campos became suspicious that Plaintiff was involved in the sale of narcotics based on things he had heard on the street and from unreliable persons who had been arrested and were under the influence of narcotic drugs.  Campos also objects to a lack of factual details in the affidavit that establish such details as how the meeting between the CI and Plaintiff was pre-arranged, or how the CI contacted Plaintiff or how contact telephone numbers were known to Campos or to the CI.

Plaintiff's contentions as to the sufficiency of the affidavit supporting the 738 Warrant are without merit.  Seen from the point of view of the magistrate issuing the warrant, probable cause is established by what Campos and Adams *saw* personally.  How Campos became suspicious of Plaintiff is perhaps relevant for purposes of establishing a context for the controlled buys, but the probable cause for the 738 Warrant is not based on rumors or statements by inmates, drug addicts or arrestees.  The probable cause is established by Campos' recounting of what he and Adams actually witnessed based on direct observation of Plaintiff's behavior in his car and at his residence during the controlled buys.

To the extent Plaintiff contends that omissions in the affidavit misled or deceived the magistrate, those contentions are also unavailing.  To support a § 1983 claim for judicial deception, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (9th Cir.2002); Hervey v. Estes, 65 F.3d 784, 788-89 (9th Cir.1995) (stating that to survive summary judgment plaintiff "must make a substantial showing of deliberate falsehood or reckless disregard for the truth and establish that, but for the dishonesty, the challenged action would not have occurred") (quotations and

1    citations omitted). The court determines the materiality of the alleged false statements or

2    omissions. Butler v. Elle, 281 F.3d 1014, 1024 (9th Cir.2002).

3        The failure of the warrant to specify details such as telephone numbers or the

4    identities of persons that provided a basis for Campos' suspicion that Plaintiff was dealing

5    drugs does not amount to deception because those factual details are not material.  That is,

6    the allegedly omitted facts fail to add or detract in any way from the significance of what

7    Campos alleges he and detective Adams *personally saw*.

8    **II. The 756 Warrant**

9        The 756 Warrant authorized the search of Plaintiff's residence and any vehicles

10   located at the residence.  The warrant was issued on November 13, 2003, which was during

11   the time Plaintiff was out of custody on bail following his prior arrest following the search

12   pursuant to the 738 Warrant.  Like the 738 Warrant, the 756 Warrant was supported by an

13   affidavit prepared by Campos that focused mainly on an account of a controlled buy carried

14   out by a "CI" and witnessed by Campos and a detective Castaneda.

15       Plaintiff's contentions with regard to the alleged insufficiency of the affidavit

16   supporting the 756 Warrant center around the identity, credibility, and motivation of the "CI."

17   As with the warrant supporting the 738 Warrant, the affidavit supporting the 756 Warrant

18   refers to the person who carried out the controlled buy as a "CI" even though the CI's role

19   during a controlled buy is not to provide information, but to act out a narcotics purchase

20   under observation.  In the case of the 756 Warrant, Campos' affidavit describes a controlled

21   buy at Plaintiff's residence wherein the CI was searched before the buy, given money by the

22   detectives and observed.  Although the actual transfer of money and narcotic was apparently

23   conducted out of the direct sight of the officers, the "CI" returned to Campos' car

24   immediately after the buy and handed over a bindle apparently containing methamphetamine.

25   The affidavit states that there were no other persons seen between the residence, where the

26   buy was supposed to have occurred, and Campos' vehicle, where the CI turned over the

27   bindle that was claimed to have been purchased.

28       The affidavit supporting the 756 Warrant provides the following facts concerning the

"CI":

> During this investigation, the (CI) was asked why the (CI) was assisting the Delano Police Department Narcotic Division. The (CI) stated the (CI) was assisting the Delano Police Department because the (CI) wanted to. Even though the (CI) has other cases pending, the (CI) was not promised anything in return when the (CI) volunteered to assist.

Doc. # 33 at 30.

Plaintiff alleges, and Defendants admit, that the affidavit supporting the 756 Warrant wrongly identifies the person making the controlled buy as a CI or "Confidential Informant." Plaintiff alleges that the "CI" referenced in the affidavit is in fact a person named Melinda Moore, who was in custody as a result of pending forgery charges. Plaintiff makes three allegations with respect to Ms. Moore. First, Plaintiff contends Campos misled the magistrate by not explaining that Moore did not "volunteer" to participate in the controlled buy, she was recruited with the expectation, if not the promise, of lenient treatment with respect to her forgery charges. Second, Plaintiff alleges that Campos failed to establish in the affidavit that his use of Moore for the controlled buy was in conformity with departmental policy, which allegedly requires the permission of either the district attorney or a supervising parole or probation officer where the "informant" is under the supervision of the court. Third, Plaintiff alleges that Campos misrepresented the extent to which Moore was searched prior to the controlled buy because she subsequently testified in court that she did not, in fact, purchase the narcotics from Plaintiff, but rather she secreted a bindle of methamphetamine in her vagina and extracted the bindle after she went to the door and pretended to knock.

Again, Plaintiff's contentions that the affidavit supporting the 756 Warrant was insufficient to support a finding of probable cause fail because Plaintiff's alleged false statements and/or omissions are immaterial. First, it is immaterial that Moore may have been motivated by the expectation or promise of leniency. What forms the basis of the magistrate judge's finding of probable cause is Campos' and Castaneda's observation of Moore during the controlled buy. If the affidavit had revealed that Moore performed her part in the expectation of leniency, that fact would not make it less likely to the magistrate that Moore did, in fact, participate in and carry out a controlled buy of narcotics from Plaintiff.

1       Second, Campos' failure to include in the affidavit any mention of securing the

2   permission of either the district attorney or the appropriate parole or probation officer is

3   similarly immaterial.  First, there is no basis for the proposition that the requirement of

4   securing permission is somehow intended to assure the reliability of the person recruited.  It

5   is far more likely that the requirement for permission is imposed for the purpose of avoiding

6   any claims of undue influence or conflicting promises of lenient treatment in processing the

7   cases of criminal defendants.  Further, even if the issue of permission did go to the reliability

8   of the recruited person, the fact remains that the probable cause supported by the affidavit in

9   this case is based not on Moore's credibility, but on what Campos and Castaneda witnessed.

10      Third, Plaintiff's contention that Campos misstated or omitted facts when he stated in

11  the affidavit that Moore was "searched" is unavailing because it is simply inaccurate.  Moore

12  was searched by way of a pat-down search.  There is no basis for the court to conclude that

13  Campos was required to state that Moore had undergone a body cavity search or that such a

14  search should have been performed.  Even if there exists some requirement that an agent

15  performing a controlled buy undergo a body cavity search, Plaintiff cannot complain for the

16  lack of performance of such a search because he suffered no constitutional harm as a

17  consequence.  If anything, Plaintiff was benefitted by the non-performance of a body cavity

18  search on Moore because it gave Moore the opportunity to recant her testimony that she

19  actually performed the controlled buy and gave rise to the dismissal of charges against

20  Plaintiff.

21      The court has no basis for finding that the affidavit submitted by Campos in support

22  of the 756 Warrant was insufficient to establish probable cause, or that Campos misstated or

23  withheld material facts that rendered the affidavit inadequate.  The court therefore rejects

24  Plaintiff's contentions as to the invalidity of the 756 Warrant.

25  **III.  The 752 and 753 Affidavits**

26      The 752 and 753 affidavits were prepared by Campos to support applications for the

27  752 and 753 Warrants that were issued on October 29, 2003, following the search of

28  Plaintiff's residence and car pursuant to the 738 Warrant that was executed on June 19, 2003.

11

The 752 and 753 Warrants authorized the search of assets held by Plaintiff in Wells Fargo Bank and Kern Schools Federal Credit Union, respectively. The affidavits supporting the two warrants are identical and Plaintiff's contentions apply equally to both warrants.

The affidavits supporting the 752 and 753 Warrants focus primarily on the finding of methamphetamine in Plaintiff's car during the June 19 search, the finding of documents indicating that Plaintiff kept financial assets at these two institutions, and Campos' stated knowledge that persons profiting from sales of drugs often keep their profits commingled with other assets in bank accounts, vehicles and other property. The affidavits state that Plaintiff was arrested on various California Health and Safety Code violations pertaining to the possession and transportation of methamphetamine.

Plaintiff makes three contentions with respect to the affidavits supporting the 752 and 753 Warrants. First, Plaintiff alleges the affidavits misstate the facts as to who was driving Campos' vehicle and who was holding the methamphetamine that was recovered during the search. Second, Plaintiff contends there was a misstatement of fact as to whether a narcotics dog handled by an officer during the search of Plaintiff's residence "alerted" on the scent of narcotics. No narcotics were apparently found at Plaintiff's residence, but money and bank documents that formed the basis of Campos' request for a warrant to search the banks were found at the residence. Third, Plaintiff objects to the characterization of the money recovered during the search of Plaintiff's residence as representing income from drug dealing.

Again, Plaintiff's contentions with regard to facts misstated or omitted from the affidavits lack materiality. As to the first of Plaintiff's contentions, the affidavits supporting the 752 and 753 Warrants state:

> As a result of the service of the [738 Warrant that was executed on June 19, 2003,] D.P.D. detectives seized approximately 25.4 grams of suspected methamphetamine. This methamphetamine was located in the vehicle [Plaintiff] was driving. [Plaintiff's] passenger, Welch, was holding the suspected methamphetamine. Detectives also seized $6,763.25, in U.S. currency from [Plaintiff's] residence.

Doc. # 33 at 78.

Plaintiff contends this paragraph misstates the fact of who was driving and who was a

12

passenger of the vehicle where the methamphetamine was found.  Plaintiff contends that

Plaintiff "was not driving the vehicle and Welch was not the passenger."  Plaintiff offers as

proof the deposition of Cassidy Hively, who states that, at the time of the vehicle stop, a

person named Chris Welch was driving and Plaintiff was the passenger.  Plaintiff's account

of the stop also suggests he was in the passenger seat and Welch was driving.

Plaintiff's contends that the factual distinction is significant because it "goes to the

issue of whether police could arrest [Plaintiff]" on charges of possession for sale,

transportation, and conspiracy to sell methamphetamine "when [Plaintiff] was only a

passenger and Chris Welch was driving and holding the drugs."  The court disagrees.  First,

the facts that provide the probable cause for the warrants to search Plaintiff's financial assets

are the fact of Plaintiff's prior arrest on the listed charges, and the fact of the finding of

indicia that there were additional financial assets at the institutions, together with Campos'

opinion that profits from drug dealing are often commingled with other assets and held in

financial accounts in institutions.  The factual account of the search of Plaintiff's truck and

residence is primarily for contextual purposes.  Second, assuming *arguendo* that Plaintiff was

not driving and/or that Welch was holding the drugs when the stop and search occurred does

not tend to exculpate Plaintiff to any significant extent.  It was Plaintiff's truck and Plaintiff

was in the truck, along with the methamphetamine.  Those facts alone are sufficient to give

rise to at least probable cause to suspect plaintiff was engaged, along with others, in drug

trafficking.

Plaintiff next objects to the fact set forth in the affidavit which states Campos' belief

"[t]hat the $6763.25, [sic] in U.S. currency, which was found in [Plaintiff's] residence, is

accumulated cash from drug sales.  Part of this money was located by Officer J. Nicholson

and his K-9 (mo), due to the K-9 alerting on the scent of narcotic."  Plaintiff alleges the

record establishes that Officer Nicholson's K-9 did not alert during the time it was on the

premises.

The factual misstatement, if any, is immaterial since the relevant information seized

during the search of the residence was the cash on hand at the residence and the indication

13

1   that additional assets were being held at the financial institutions.  Since there is no

2   contention that narcotics were seized at Plaintiff's residence, it is both immaterial and not

3   surprising that the narcotic-sniffing dog did not alert.  The misstatement or omission has no

4   bearing on the establishment of probable cause for the search of Plaintiff's financial assets.

5          Last, Plaintiff takes issue with representations made by Campos in the affidavit that

6   reflected Campos' belief that Plaintiff had been an active narcotics dealer for approximately

7   ten years and that much of the evident material wealth Plaintiff possessed represented the

8   fruits of narcotics trafficking.  Campos' characterization of Plaintiff as a drug dealer of ten

9   years standing, and the conclusion that Plaintiff's legitimate income is insufficient to account

10  for his total assets, are clearly labeled in the affidavits supporting the 752 and 753 Warrants

11  as being Campos' belief or opinion, not as facts.  Given that Campos' beliefs and opinions in

12  the affidavits are clearly labeled as such, and given that Campos' affidavits give the bases for

13  his beliefs and opinions, the court cannot, as a matter of law, construe those opinions as

14  misstatements or omissions of fact.

15         The allegation that underlies all of Plaintiff's contentions regarding the sufficiency of

16  the affidavits supporting all the searches that are the subject of this action, is that the

17  affidavits, and the subsequent warrants, are the product of Campos' personal antipathy for

18  Plaintiff that originated in a 1996 run-in between Plaintiff and Campos over Campos'

19  treatment of Plaintiff's sister.  While Defendants' have not responded to the allegation, the

20  court finds that, even if the incident occurred in 1996 as alleged, the bare allegation that an

21  event in 1996 caused Campos to falsify information or withhold relevant information in

22  affidavits that were submitted to secure search warrants at least six years later is insufficient

23  to show a causal connection.  The court cannot conclude as a matter of law, that affidavits

24  were motivated by improper motives on the part of Campos because Plaintiff presents no

25  facts to support the generalized allegation of ongoing harassment.

26         The instances of alleged misstatements or omissions from the affidavits supporting

27  the search warrants that are the subject of this action are few in number, and of little or no

28  materiality.  Notwithstanding these minor and immaterial omissions and misstatements, the

affidavits have been determined by the court to be sufficient on their faces to sustain a finding of probable cause.  Plaintiff has not refuted any of the core factual allegations of any of the affidavits that underpin their validity.  The court therefore has no basis to find that any of the search warrants were not based on probable cause.

As the moving party, Plaintiff has the burden to establish that the searches that are the subject of this motion were not supported by probable cause and that Plaintiff therefore suffered a constitutional injury as a result of the searches.  The affidavits supporting the four search warrants have been examined and the court finds Plaintiff has failed to support a prima facie claim that the affidavits contain material misstatements or omission that would render them insufficient to establish probable cause.  The court therefore finds Plaintiff has failed to carry his burden to establish a prima facie case that the searches conducted pursuant to the warrants were unconstitutional.

Because Plaintiff has failed to demonstrate constitutional injury, the court need not address contentions by either party that the defense of qualified immunity is or is not applicable in this case.


THEREFORE, in consideration of the foregoing discussion it is hereby ordered that Plaintiff's motion for summary judgment is DENIED.


IT IS SO ORDERED.

**Dated:     January 5, 2007**                              **/s/ Anthony W. Ishii**
0m8i78                                                              UNITED STATES DISTRICT JUDGE

15